**TEXAS CO. et al. v. CHICAGO & A. R. CO.**

No. 2940.

District Court, N. D. Illinois, E. D.

Dec. 26, 1940.

Winston, Strawn & Shaw, of Chicago, Ill. (Frank H. Towner, of Chicago, Ill., of counsel), for petitioner.

Follansbee, Shorey & Schupp, of Chicago, Ill. (John E. Gavin, of Chicago, Ill., of counsel), for respondent.

CAMPBELL, District Judge.

On June 11, 1940, the Alton Railroad Company, purchaser at judicial sale of the railroad properties sold under decree of the court in this case, filed a petition in this case asking the court to make effective by proper order a written election, filed by the said company with the clerk of this court on June 10, 1940, not to assume or adopt a certain lease covering the use of the railroad tracks and properties owned by the Kansas City, St. Louis and Chicago Railroad Company. The petition also asked for other relief in connection with the petitioner's use of these properties since July 18, 1931.

The Kansas City, St. Louis and Chicago Railroad Company and certain stockholders of that company have filed motions to strike the petition on the ground that the petition sets forth no matters or things justifying the granting of the relief prayed for. In support of their motion the said stockholders filed a memorandum brief as also did the respondent, Kansas City, St. Louis and Chicago Railroad Company. In reply to these, the petitioner filed memorandum briefs opposing the motion to strike. Following these the said stockholders and the Kansas City, St. Louis and Chicago Railroad Company filed memorandum reply briefs. Oral argument was then had in open court. In many instances the briefs and argument have added to the facts set forth in the petition. In addition the court has read and considered many pertinent facts contained in the voluminous record in this case.

It appears that a creditor's bill was filed in this case by the Texas Company and other creditors of the Chicago and Alton Railroad Company, on August 30, 1922; that on the same day the court appointed receivers to operate the railroad of the defendants which receivers so operated and continued in possession of the properties for a period of approximately nine years, or until July 18, 1931, when the railroad and all properties of the said defendant were conveyed to the petitioner herein by master's deed pursuant to proper orders and decrees of court; that the petitioner has operated the said railroad and properties since that time and is still operating them.

Among the assets of the defendant was a lease executed on March 15, 1878, by the Kansas City, St. Louis and Chicago Railroad Company to the Chicago and Alton Railroad Company, providing for the construction of a line of railroad from Mexico, Missouri, to Kansas City, Missouri, and a lease of the said line in perpetuity, said lease being subsequently modified on May 29, 1879, by agreement between the Kansas City, St. Louis and Chicago Railroad ·Company, the Chicago and Alton Railroad Company and the United States Trust Company of New York. The line of railroad so leased amounted to approximately 161 miles and constituted about one sixth of the main railroad line of the Chicago and Alton Railroad Company, which main line extends from Chicago to Kansas City, Missouri. It was always operated by the Chicago and Alton Railroad Company as an integral part of its entire system and continued to be so operated by the receivers during the nine years of their possession and is today so operated by the petitioner herein.

The rent provided for in the said lease is paid in the form of dividends to the stockholders of the Kansas City, St. Louis and Chicago Railroad Company. These payments were regularly made, first by the Chicago and Alton Railroad Company, subsequently by the receivers who operated the lines for nine years, and more recently by the petitioner, who has continued such regular payments down to this time when it now seeks to repudiate the said lease. The first payment made by the receivers was in accordance with an order of court on March 7, 1923, covering several different payments and expressly providing that the order should not be construed as an adoption of any of the leases referred to therein, and reserving to the court the right to direct the receivers to adopt or not to adopt such leases as the court might thereafter determine. No subsequent orders other than routine authority to the receivers to pay at regular intervals were made by the court on this lease.

In addition to the lease with the Kansas City, St. Louis and Chicago Railroad Company, the petitioner acquired at the sale and still owns a large block of stock of the Kansas City, St. Louis and Chicago Railroad Company and actually operates that Company for the stockholders.

The final decree and the deed to the petitioner contained provisions permitting the purchaser to elect, within the period of one year after the date of the delivery of the deed or within such additional period of time as the court might thereafter by its order or decree permit, not to assume or adopt any lease, traffic, trackage, terminal, crossing or operating agreement or other contract not theretofore fully performed, made or assumed.

It appears that subsequently to the entry of the final decree, the court did on various occasions extend by its order the time within which the purchaser might elect not to assume or adopt the agreements referred to and that such extensions were usually made upon the petition of the City Bank Farmers Trust Company and were unopposed and granted by the court as of course. It also appears that notice was given to various interested parties prior to the filing of such petitions to extend time but never to the respondent, the Kansas City, St. Louis and Chicago Railroad Company nor to its stockholders. Orders entered on such petitions have extended the time of election to beyond June 10, 1940, the date on which the petitioner filed with the clerk of this court its election not to assume or adopt the lease with the Kansas City, St. Louis and Chicago Railroad Company.

In support of their motion to strike the petition, the respondents advance three principal grounds: First, that the application of the petitioner to the Interstate Commerce Commission in connection with the acquisition of the railroad properties pursuant to the sale and the subsequent certificate and orders of the Commission and operation of the entire line of railroad thereunder constitute an assumption by the petitioner of the said lease. Second, that user of the properties of the Kansas City, St. Louis and Chicago Railroad Company by the receivers constituted an assumption of the lease by the receivers. Third, that the court had no authority to enter the various orders extending the time within which an election not to adopt a contract might be made by the purchaser.

With reference to the first point advanced by the respondents, it is my opinion that the proceedings before the Interstate Commerce Commission relating to the petitioner's request for authority to purchase and operate the properties covered by the decree do not of themselves constitute an adoption of the lease in question. The orders of the Interstate Com-

merce Commission were only permissive. The petitioner's pleadings before the Commission, however, and its subsequent actions after the Commission's orders had been entered are of record in this case, and should be considered in determining how the petitioner at that time regarded this lease. Such consideration does lend weight to the respondent's contention that the petitioner at the time of the proceedings before the Interstate Commerce Commission appears to have regarded the lease with the Kansas City, St. Louis and Chicago Railroad Company as having been fully adopted by the receivers and passed on to it by the deed.

. I am in agreement with the second point advanced by the respondents, that the receivers' use of the properties covered by the lease under discussion constituted sufficient user to establish adoption of that lease by the receivers. The law is well settled that a receiver is entitled to a reasonable time within which to elect to adopt or repudiate contracts. The Supreme Court has so ruled in many cases; Sparhawk v. Yerkes, 142 U.S. 1, 12 S.Ct. 104, 35 L.Ed. 915; Sunflower Oil Company v. Wilson, 142 U.S. 313, 12 S.Ct. 235, 35 L.Ed. 1025; Quincy, Missouri & Pacific Railroad Company v. Humphreys, 145 U.S. 82, 12 S.Ct. 787, 36 L.Ed. 632; United States Trust Company v. Wabash Railroad, 150 U.S. 287, 14 S.Ct. 86, 37 L. Ed. 1085. This general principle has been universally followed in numerous decisions by all of the Circuit Courts of Appeals. What constitutes a reasonable time within which the receiver should make up his mind whether it is to the advantage of the estate to adopt or repudiate a given contract is, under the well established law, a matter to be determined in each case. In the case of St. Joseph & St. Louis Railroad Company v. Humphreys, 145 U.S. 105, 12 S.Ct. 795, 36 L.Ed. 690, the Supreme Court held that a period of approximately six months taken by a receiver to decide to repudiate a lease was reasonable. Many Federal and State Court cases cited by counsel decide that periods ranging from six months to a year are a reasonable time within which a receiver might determine the advisability of accepting or repudiating contracts. In this case we have the receivers in possession for nine years without exercising their right to elect not to assume this lease and making regular quarterly payments each year under the lease. True, the court in its order authorizing one of such payments in the year 1923 did provide generally that the payment was made without prejudice to the right of the receiver subsequently to elect not to adopt the lease. However, since no subsequent action was taken toward repudiating the lease either by the court or by the receivers, and since regular quarterly payments of rent were made under the lease by the receivers for over nine years thereafter, during which time the receivers continued to use and operate the portion of their railroad covered by said lease as the integral and important part of their railroad system which it is, it seems clear that the receivers and the court intended to adopt the said lease and did by their acts adopt it. The provision in the final decree granting the purchaser the right to elect not to assume certain contracts not already adopted does not apply to this lease which had already been fully adopted and performed by the receivers. That the petitioner regarded this lease as adopted and accepted by the receivers is evident from its statements before the Interstate Commerce Commission as well as by its subsequent actions in making the stipulated payments for nine years after taking over possession from the receivers and by continuing to operate the portion of their railroad covered by said lease. It is unreasonable on the face of the record in this case to assume the court ever intended by any order or decree that after nine years of continuous operation and regular payments by the rceeivers and subsequently nine years additional continuous operation and regular payments by the petitioner, with no attempt by either to renounce the lease, that the petitioner still has the right at this late date to elect not to adopt the lease.

A review of the record in this case convinces me that the court by its final decree did not intend to provide the right to the petitioner to disavow this particular contract. In fact, a review of the record indicates that the court did not intend the disavowal right to apply to main line leases at all and that it regarded such leases which go to make up integral and indispensable parts of the entire railroad system in this case as having been fully accepted and adopted by the receivers. The final decree among other things states: "That the lines of railroad and other property directed in and by this Decree to be sold, including leased lines and lines controlled

66

through stock ownership, and lines operated under operating contracts, constitute, and have been operated as, a complete railroad system." The decree further provides that the purchaser "assume and discharge all contracts, leases and agreements entered into, made, assumed or adopted by the receivers". The lease under consideration clearly falls within the catagory of those assumed and adopted by the receivers.

I cannot agree with the argument of counsel for the petitioner that the general terms of the decree preserving the right of disavowal have any relation, reference or application whatever to the lease under consideration. A reasonable construction of the decree in the light of the record in this case forces the conclusion that the court did not contemplate a right to disavow this lease in entering its final decree.

It is unnecessary in view of my opinion on the second point raised by respondents to consider the third point as to whether or not the court had jurisdiction to enter the various orders extending time.

For the reasons outlined, the motion to strike the petition of the Alton Railroad Company filed herein on June 11, 1940, is hereby sustained and the siad petition is accordingly stricken.